### GALLARDO, Treasurer of Porto Rico, v. COOMBS et al.

Circuit Court of Appeals, First Circuit.
November 27, 1928.

No. 2256.

William Cattron Rigby, Lieutenant Colonel, Judge Advocate, John A. Hull, Major General, Judge Advocate General, both of Washington, D. C. (James R. Beverley, Atty. Gen. of Porto Rico, on the brief), for appellant.

Dean Hill Stanley, of Washington, D. C. (David A. Buckley, Jr., of New York City, on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a suit at law begun in the United States District Court for Porto Rico on May 20, 1920, by the trustees in dissolution of the Fajardo Sugar Company—which was doing business in Porto Rico until February, 1919—against the treasurer of Porto Rico, to recover seven-twelfths of an income tax—$28,806.18—voluntarily paid by the Fajardo Company on January 3 or 7, 1919, under Act No. 59 of the Porto Rican Legislature, approved December 4, 1917. A jury trial was, in writing, waived by both parties. The court below found for the plaintiff in the full amount claimed, $16,803.57.

This case, like most tax cases, turns upon the construction of statutes—the ascertainment of the legislative intent. Until June 26, 1919, Porto Rico was subject to the federal income tax under the Act of September 8,

524

1916, 39 Stat. 756. But by the War Revenue Act of October 3, 1917, 40 Stat. 300, and again by the Act of February 24, 1919, 40 Stat. 1087, Congress vested in the Porto Rican Legislature power to amend, modify, or repeal the federal income law otherwise there operative. The first exercise of this new power was by the passage of Special Act No. 59 of December 4, 1917, entitled "An act to provide additional revenues for the people of Porto Rico through the levying of certain additional income taxes, and for other purposes." By section 1 of this act it was provided: "That in addition to any normal or additional taxes imposed by existing law, there shall be levied," etc., for the year July 1, 1917, to June 30, 1918, an income tax on a stated sliding scale. By its terms, Act No. 59 covers the year ending June 30, 1918, and no other period. Sections 7 and 8 provide for returns within 60 days from the end of the tax year, and the payment of the tax within 15 days after notice from the treasurer of his determination of the amount thereof. It thus contemplated actual collection in the fall of 1918. Under this act the Fajardo Sugar Company made a return of an income of $756,154.40, and paid on January 3 or 7, 1919, a tax of $28,806.18, without protest. In the record is a certificate from the treasurer's office, dated August 3, 1927, stating that the company made "its income tax return for the taxable year *ended July 31, 1918*," and this certificate was apparently carelessly adopted both by counsel and by the court below as accurate. It was not; for, as noted above, under Act No. 59 the taxable year ended June 30, 1918, not July 31, 1918. No tax was, or could be, assessed under it for a year ending July 31, 1918. This blundering admission of the Porto Rican tax authorities of a payment to *July 31, 1918,* under a statute applicable only until June 30, 1918, is fairly characteristic of this entire record and of the loose and careless proceedings in the tax department and in the trial before the court below.

While, about a year later, the Porto Rican Legislature, by Act No. 8, approved December 12, 1918, continued Act No. 59 in force for the next fiscal year, ending June 30, 1919—Act No. 8 was never put into actual operation for tax-levying purposes; for, on June 26, 1919, the Legislature dealt, generally, with its plenary income tax powers by enacting an elaborate act of 83 sections, Act No. 80—and repealed, or (more accurately) made inoperative in Porto Rico, the federal tax act, as well as section 1 of Act No. 8, which extended Act No. 59 for another year.

The amount of the income tax paid by the Fajardo Sugar Company under the new general Act No. 80 for the calendar year 1918 is not shown by evidence; but there is in the record a letter from the sugar company's attorney to the treasurer, dated December 13, 1923 (replete with inconsistencies), in which it is stated:

"In addition to having paid a tax imposed by law No. 59 for the income derived since January 1, 1918, *to July 31, 1918,* the company also paid, in accordance with Law No. 80, *for the same period, the sum of $60,322.-72.*"

Probably the writer intended to say, not that $60,322.72 was paid "for the same period"—i. e., January 1 to July 31, 1921, seven months—but for the year 1918. However that may be, there is neither allegation nor evidence that the tax assessed under Act No. 80 for the calendar year 1918 was not paid in full and without protest.

The court ruled:

"Act No. 80 of June 26, 1919, was made effective and took effect January 1, 1918, and was intended to supersede and did supersede any and all other income tax laws on and after said January 1, 1918, and among them Act No. 59. The Fajardo Sugar Company paid in excess under Act No. 59 that portion of the tax corresponding to the income from January 1, 1918, to July 31, 1918, the income for which period was only subject to the tax provided for by Act No. 80. That complainants as trustees of the Fajardo Sugar Company are therefore entitled to a refund of seven-twelfths of $28,806.18, or $16,803.57.

"Upon the approval of said Act No. 80, the treasurer of Porto Rico was in duty bound to credit the Fajardo Sugar Company with the payment made under Act 59, to wit, $16,803.57, and not having done so, he should be compelled to return the said amount to the complainants."

Passing the error as to seven months, instead of six months, this ruling amounts to holding that Act No. 80 is to be construed as requiring taxes levied under Special Act No. 59 *on income for the first half of 1918,* already paid (unless long overdue), to be applied as payment pro tanto of taxes assessed under No. 80, enacted a year and a half later.

To sustain this ruling, we must find in Act No. 80 clear directions to the treasurer to ascertain and credit as part payment of taxes levied thereunder all taxes levied and paid under Act No. 59 on income accrued

in 1918. It is not enough to hold Act No. 59 "repealed," for it had done its work, and was (as to this taxpayer at least) functus officio; nor that it was "superseded," whatever that may mean; for Act No. 80 authorized the *levy* of taxes for the calendar year 1918, and clearly such taxes must be *collected* under the terms of Act No. 80. The sole question, then, is whether, under the sections in No. 80 dealing with collection, we find directions to credit any part of taxes collected under an act passed a year and a half previous. There are no such directions. Sections 64 and 65 are headed, "Collection of Income Tax," and simply provide that taxes levied under Act No. 80 shall be collected by the treasurer through the same summary proceedings provided by existing law for the collection of property taxes, and that the treasurer shall give proper receipts for payments. This mandate to the treasurer was absolutely unqualified; it required him to collect all—not a part—of the tax levied under that act; previous collections under Act No. 59 were no more part payment of taxes levied under No. 80 than previous collections under the federal act of 1916, supra.

Other tests of statutory construction lead to the same result. In this case we have not only the contemporaneous construction of the executive officers charged with the enforcement of the act, but apparently of the taxpayers; many of them large concerns, presumably acting under the advice of experienced and competent counsel. Under these conditions, this well-established doctrine has unusual weight. See Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428, 430; Old Colony Trust Co. v. Malley (C. C. A.) 19 F.(2d) 346, 347. Inferentially, all other taxpayers in Porto Rico made like payments, in like manner, without protest. To affirm the judgment below would apparently put this taxpayer in a class by itself, exonerating it from a substantial tax paid by all other concerns in like status.

Again, Act No. 80 provides no method for determining and applying the amount of the income tax accruing for the first half of 1918 as payment pro tanto of the tax imposed by Act No. 80. There is no presumption that the profits of a taxpayer for the last half of 1917 were equal to its profits for the first half of 1918. It was a time of war and of widely fluctuating prices, particularly in the sugar industry. To hold, as the court below held, that the tax paid under Act No. 59 should be prorated by periods (erroneously seven-twelfths, instead of six-twelfths), is to ignore the logical basis of

the ruling, which obviously was that all income taxes for 1918 under both acts should be based solely on the profits of 1918. As the Legislature provided no method of determining what proportion of the tax under No. 59 for the year ending June 30, 1918, was based on profits accruing after January 1, 1918, the inference is irresistible that no such offset (or credit) was intended. To make Act No. 80 workable on the theory of the court below would require us to read into it provisions (inter alia) for new returns under Act No. 59, showing profits for each six months of the tax year July 1, 1917, to June 30, 1918, and then to credit taxes paid on the profits of the second six months as part payment of the new tax assessed under Act No. 80.

If we turn to the specific language in Act No. 80, relied upon by the appellee's counsel in support of their proposition, we reach the same result. The definition of "taxable year" in section 2, entitled "General Definitions," does not help the appellees. It reads:

"The term 'taxable year' means an accounting period of twelve months upon the basis of which net income shall be computed pursuant to this act. The first taxable year for the purposes of this act, shall be the calendar year ending the thirty-first day of December, nineteen hundred and eighteen, or any accounting period of twelve months ending during the calendar year nineteen hundred and eighteen. Subsequent taxable year shall be computed from the date on which the first taxable year expires: Provided, that in no case shall a tax rate higher than the one established by income laws in force on said date be collected on income obtained prior to January 1, 1918."

The proviso at the end of section 2 that "in no case shall a tax rate higher than the one established by income laws in force *on said date* be collected on income obtained *prior to January 1, 1918,*" has no application to income accrued after January 1, 1918, the sole subject-matter of Act No. 80.

Sections 77, 78 and 79 read:

"Section 77. That pursuant to the provisions of section 5 of the federal Act of October 3, 1917, granting power to the Legislature of Porto Rico to amend, alter, modify or repeal the income-tax laws in force in Porto Rico, through proper legislation, there is hereby repealed in Porto Rico the federal Act of September 8, 1916, as amended October 3, 1917, except that the same shall continue in force with regard to the levying and collection of all taxes accrued thereunder and for the levying and collection of all

fines heretofore imposed or which it may be necessary to impose in connection with said taxes: Provided, that for the calendar year 1918 no income tax shall be collected which is different from that established by this act.

"Section 78. That all laws or parts of laws in conflict herewith are hereby repealed; but the provisions thereof shall continue in force as regards the levying and collection of all taxes accrued thereunder, and for the levying and collection of all fines imposed or that may be imposed in connection with said taxes; and any appropriation made for the purpose of carrying out the provisions of said laws shall also remain in force.

"Section 79. That section 1 of Act No. 8, approved December 12, 1918, entitled 'An act to continue in force the provisions of an act entitled "An act to provide additional revenues for the People of Porto Rico, through the levying of certain additional income taxes, and for other purposes," approved December 4, 1917, for the purpose of reconstructing the insular buildings and aiding the municipalities, school boards and private persons in the reconstruction of buildings that have been damaged by reason of the recent earthquakes; to create a board; to authorize the Governor of Porto Rico to borrow certain amounts, and for other purposes,' be, and the same is hereby, repealed."

From section 77, counsel excerpt and rely upon the language at the end:

"That for the calendar year 1918 no income tax shall be collected which is different from that established by this act." But this language must be read in the light of its context; the context shows that the Legislature was, by this section, for the first time, exercising its power to make the *federal law* inoperative for the future in Porto Rico; but with a saving clause that the federal law should remain in force so far as necessary to cover the collection of any uncollected tax accrued thereunder. Then by way of caution—lest the saving clause should be over-extended into a possible basis for a new assessment under the federal law—it added the proviso, "That for the calendar year 1918 no income tax *shall be* collected which is different from that established by this act." But this proviso plainly refers to the old federal law; it does not refer to the Special Income Tax Act, No. 59, passed by the Porto Rican Legislature itself. And it looks to *future* assessments; not to assessments made nearly a year earlier under Act No. 59 and presumably already collected and spent. This proviso cannot be twisted nor extended into a

requirement that the treasurer should ascertain the amount of income paid by taxpayers, under Act No. 59, on profits accrued during the first half of 1918, and credit such payment to the amount assessed under the new general Act No. 80.

Section 78 leads to the same conclusion. It provides: "That all laws or parts of laws in conflict herewith are hereby repealed; *but the provisions thereof shall continue in force as regards the levying and collection of all taxes accrued thereunder.*" Act No. 59 is not in conflict; it was not repealed; and the saving clause is broad enough to cover any taxes accrued under it and then unpaid. If the Porto Rican Legislature had intended that taxes already paid or long overdue under Special Act No. 59 should offset, pro tanto, taxes accruing under the General Act No. 80, it would have said so in plain terms. It would not have left a provision,—so unusual and so inconsistent with wartime needs, —to be inferred (years after) out of a definition of the taxable year and the repeal in Porto Rico of the federal income tax law.

Some significance also attaches to the provision in section 79, expressly repealing section 1 of Act No. 8 (which extended for another year Act No. 59) without indicating any purpose not to leave Act No. 59 in full operation and effect for the tax year July 1, 1917, to June 30, 1918. If the Legislature had intended to make Act No. 59 in effect inoperative for the latter half of the tax year covered by it, it would not have repealed the extension of the act for another tax year without mentioning the first six months of 1918, as to which, as is now argued, Act No. 59 was "superseded." Otherwise put, section 79 shows an intent to leave all rights created by Act No. 59 unaffected.

Our general conclusion that Act No. 80 had no legal effect upon taxes levied and/or paid under Act No. 59, makes it unnecessary for us to deal with the other defenses urged by appellant's learned counsel: (1) That the payment was voluntary and cannot be recovered under well-settled doctrine. 2 Cooley, Taxation (3d Ed.) pp. 1495–1504, and cases cited; 34 Cyc. p. 1178 et seq.; (2) that it is barred by the statute of limitations.

This suit was brought nearly 7 years after a voluntary payment of the tax under Act No. 59, more than 3½ years after the first written notice to the treasurer of the claim now made. Only the clearest expression of legislative purpose, both to create, and *to keep alive,* such a claim, would warrant a court in thus depleting a public treas-

ury. We perceive no legal basis for this suit.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.